**Clyde H. BELLECOURT, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

Civ. No. 4–89–828.

United States District Court, D. Minnesota, Fourth Division.

Feb. 11, 1992.

Larry B. Leventhal, Douglas Hall, Minneapolis, Minn., for plaintiff.

Thomas Heffelfinger, U.S. Atty. and Lonnie F. Bryan, Asst. U.S. Atty., Minneapolis, Minn., for federal defendant.

Leo G. Stern, Laurie J. Miller and Fredrikson & Byron, P.A., Minneapolis, Minn., for defendant Wynne.

## ORDER

DOTY, District Judge.

This matter is before the court on the federal defendants' motion for dismissal or, in the alternative, for summary judgment and on defendant Wynne's motion for partial summary judgment. Based on the files, records and proceeding herein, the federal defendants' motion for dismissal on plaintiff's federal tort claim will be granted, the federal defendants' motion for summary judgment on plaintiff's other claims against the federal defendants will be granted and defendant Wynne's motion for summary judgment will be granted.

## BACKGROUND

Plaintiff Clyde H. Bellecourt asserts causes of action for negligence, medical malpractice, violation of due process, cruel and unusual punishment, civil rights violations under 42 U.S.C. § 1981 and 42 U.S.C. § 1985(3), statutory violations, and violation of various duties owed to him. Those causes of action stem from two alleged incidents of mistreatment plaintiff claims occurred while he was incarcerated in the Federal Medical Center in Rochester, Minnesota ("FMC") in 1987. First, plaintiff, who is over fifty years old, claims that he was assigned to work in the FMC kitchen in contravention of a prison policy that states that persons over fifty are not re-

quired to work in the kitchen. Second, plaintiff claims that he suffered a heart attack on September 16, 1987, and that prison officials and the physician at FMC deliberately ignored his requests for treatment of his painful ailment.

Defendant Dr. Wynne moves for summary judgment on all claims of medical malpractice against him on the grounds that plaintiff failed to submit timely affidavits of expert review as required by Minn. Stat. § 145.682. The federal defendants move for dismissal on various grounds or, in the alternative, for summary judgment on all claims against them.

▆ The court heard oral arguments on those motions on March 1, 1991. On March 6, 1991, the court issued a preliminary order regarding plaintiff's negligence claims against the government.[1] The court ruled that before it could consider defendants' motions as they applied to the merits of plaintiff's claims, the court had to decide the threshold jurisdictional issue of whether plaintiff properly presented his negligence claims to the appropriate federal agency, as required by the Federal Tort Claim Act ("FTCA"). The FTCA requires that a plaintiff satisfy the presentment requirement before the court may exercise jurisdiction over the claim.[2] *See Melo v. United States,* 505 F.2d 1026, 1028–29 (8th Cir.1974). The presentment requirement is satisfied only when the appropriate federal agency actually receives the claim.[3]

In its March 6, 1991, order, the court held that plaintiff had not proved that he had satisfied the presentment requirement.[4] Plaintiff's affidavits indicating that he mailed the claims to the FMC were not sufficient to establish that the agency "received" plaintiff's claim. However, rather than dismissing plaintiff's federal tort claims for want of subject matter jurisdiction, the court provided plaintiff with an additional opportunity to establish that the appropriate federal agency had received his claim. Accordingly, the court ordered that the plaintiff could conduct additional discovery on the issue of presentment of his administrative claims.[5] That discovery has now been completed.

1. *See Bellecourt v. United States,* No. 4–89–828 (D.Minn. Mar. 6, 1991).

2. 28 U.S.C. § 2675(a) provides in pertinent part that:

   An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal Agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

3. 28 C.F.R. § 14.2(a) entitled "Administrative Claim; When Presented" supplements 28 U.S.C. § 2675(a) and provides in pertinent part:

   For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal Agency receives from the claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident....
   *See also Drazan v. United States,* 762 F.2d 56, 58 (7th Cir.1985) (citing 28 C.F.R. § 14.2(a); 28 C.F.R. § 14.604(b)) (finding that for purposes of the Federal Torts Claims Act, "mailing is not

presenting; there must be receipt."); *Murray v. United States,* 604 F.Supp. 444 (E.D.Pa.1985) (same); *Barlow v. Avco Corp.,* 527 F.Supp. 269, 273 (E.D.Va.1981) (same).

4. The court also found that plaintiff has the burden of proving presentment of his claim to the appropriate federal agency. *Bellecourt v. United States,* No. 4–89–828 at 7 (D.Minn. Mar. 6, 1991) (citing *Murray v. United States,* 604 F.Supp. 444, 445 (E.D.Pa.1985) (citing *Bailey v. United States,* 642 F.2d 344 (9th Cir.1981)).

5. Originally, the court ordered that plaintiff had until April 7, 1991, to conduct discovery on the issue of presentment of a proper administrative claim and to provide the court with evidence establishing that plaintiff has complied with 28 U.S.C. § 2675(a). Because plaintiff was still conducting discovery on April 7, 1991, the court extended the time for discovery and ordered that plaintiff had thirty days to conduct discovery subsequent to the adequate response by the federal defendant to the discovery ordered by Magistrate Judge Floyd E. Boline in his order dated March 29, 1991. *Bellecourt v. United States,* No. 4–89–828 at 2 (D.Minn. Apr. 24, 1991). On July 11, 1991, deposition taking concluded. On September 4, 1991, almost sixty days later, plaintiff filed an extensive memorandum of law. That memorandum contains only six pages devoted to the issue of presentment,

## DISCUSSION

### Status of Defendant Dr. Wynne

■ As a preliminary matter, the court must determine whether Dr. Wynne is a federal or private sector employee. The United States Attorney's office originally represented defendant Dr. Wynne because the Department of Justice and the Bureau of Prisons considered him a federal employee. In August, 1990, the Department of Justice reversed its position and determined that Dr. Wynne was an independent contractor with FMC. Thereafter, Dr. Wynne retained private counsel to represent him in this matter. On May 30, 1991, the federal defendants moved the court to amend its answer in order that it might reflect that Dr. Wynne was an independent contractor and that he was represented by private counsel. Dr. Wynne did not file an objection to the government's motion and plaintiff had no objection to the government's motion.

The contract between Dr. Wynne and the Bureau of Prisons repeatedly describes Dr. Wynne as a contractor. The contract states that Dr. Wynne's position with FMC "is ... contractual and not an appointment.... Contractor shall not be subject to government supervision." Exhibit C to federal defendant's motion to dismiss or, in the alternative for summary judgment at 1. The contract further specifies that the "[g]overnment will not withhold any taxes and the contractor is not entitled to any fringe benefits." *Id.* Other documents submitted with the federal defendants' motions also allude to the contractual nature of Dr. Wynne's employment with FMC. The court finds that Dr. Wynne was an independent contractor with FMC at the time of the alleged malpractice and grants the federal defendants' May 30, 1991, motion to amend their answer to reflect Dr. Wynne's independent contractor status.

Because Dr. Wynne was an independent contractor at the time of the alleged malpractice, the court concludes that Dr. Wynne is not an appropriate party to plaintiff's federal tort claim but is subject to his separate state law claim of medical malpractice.

■ The court also finds that plaintiff can assert his fifth and eighth amendment *Bivens* claims against Dr. Wynne. Generally, a plaintiff may assert a constitutional claim only against a federal official. *See Bivens v. Six Unknown Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In a case similar to the one at bar, however, the Supreme Court held that an inmate in a state prison could bring an eighth amendment claim, pursuant to 42 U.S.C. § 1983, against a doctor who contracted with the state to provide medical care to inmates on a part-time basis. *West v. Atkins,* 487 U.S. 42, 55–57, 108 S.Ct. 2250, 2258–60, 101 L.Ed.2d 40 (1988). The Court found that the doctor's treatment of the inmate "was state action fairly attributable to the State, and that ... [the doctor] acted under color of state law for purposes of § 1983." *Id.* at 57, 108 S.Ct. at 2260.

"The fact that the State employed respondent pursuant to a contractual arrangement that did not generate the same benefits or obligations applicable to other 'state employees' does not alter the analysis. It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State.... Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights."

and the remainder of it addressed issues that are either completely new or outside the scope of the court's March 6, 1991 order. Further, the September 4, 1991, memorandum brings plaintiff's total number of briefing pages on the pending motions to one hundred and nine. Although the court has not strictly enforced the local rule limiting the length of briefs submitted in this case, the court finds that plaintiff's latest submission constitutes a flagrant violation of the court's previous order requesting a memorandum solely on the issue of presentment. Accordingly, the court will consider only that portion of plaintiff's September 4, 1991, memorandum of law that discusses the issue of presentment.

*Id.* at 55–56, 108 S.Ct. at 2259. The holding in *West* is instructive to the determination to be made in the case at hand because a *Bivens* claim is analogous to a § 1983 claim. "The effect of *Bivens* was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous, to the § 1983 action against state officials." *Dean v. Gladney,* 621 F.2d 1331, 1336 (5th Cir.1980); *see also Schowengerdt v. General Dynamics Corp.,* 823 F.2d 1328, 1337–38 (9th Cir. 1987) (finding that the private status of a defendant will not serve to defeat a *Bivens* claim for violation of constitutional rights provided that defendant engaged in federal action). Therefore, the court concludes that Dr. Wynne is an appropriate party to plaintiff's *Bivens* claims.

### *Presentment of the Administrative Claim*

▪ Whether plaintiff properly presented his administrative claim is a jurisdictional issue. The federal defendants move the court for an order dismissing plaintiff's federal tort action pursuant to Fed.R.Civ.P. 12(b)(1). Rule 12(b)(1) "[j]urisdictional issues, whether they involve questions of law or of fact, are for the courts to decide." *Osborn v. United States,* 918 F.2d 724, 729 (8th Cir.1990). The court may consider matters outside the pleadings in a challenge to subject matter jurisdiction. *Id.* at 728 n. 4 (citations omitted).

▪ Plaintiff continues to allege that he properly presented an administrative claim under 28 U.S.C. § 2675(a). First, plaintiff alleges a presumption of receipt. Plaintiff submitted affidavits stating that his claim was mailed to the FMC. Second, plaintiff claims that deposition testimony indicates that FMC received plaintiff's administrative claim, thereby supporting the presumption of receipt and satisfying plaintiff's burden of establishing presentment. Plaintiff alleges that the depositions of Dr. Daniel Foster, Chief Psychologist at FMC, and John Chreno, coordinator of social services at FMC when plaintiff had his heart attack, provide sufficient evidence that FMC received plaintiff's claim. Plaintiff cites a portion of Dr. Foster's deposition in which the doctor states that he overheard a conversation regarding plaintiff's claim shortly after plaintiff allegedly mailed the claim. Plaintiff also cites a portion of John Chreno's deposition in which he states that he remembered a discussion about the claim at a department head meeting. Chreno attributed that discussion to a newspaper article. Plaintiff also submitted the affidavit of Ray Howe, Director of Research Unlimited in Rochester, Minnesota, in which Howe states that no Minnesota daily newspaper carried an article on plaintiff's lawsuit between October 1988 and January 1989. Based on that evidence, plaintiff claims that FMC officials must have received plaintiff's administrative claim.

The court finds that plaintiff has not satisfied his burden of showing that FMC actually received his administrative claim. Presumption of receipt is not sufficient to withstand the federal defendants' motion to dismiss. Plaintiff must show that FMC actually received his claim and the deposition testimony that plaintiff relies on to establish presentment is too speculative to prove that FMC actually received his claim.

Plaintiff draws his inference of receipt from the following portions of Dr. Foster's and John Chreno's testimony:

*Dr. Foster*

Q. I want to focus on this conversation you overheard for a couple of seconds, okay?

A. Yes.

Q. As I understand it one, you cannot tell us who made the statement?

A. That's correct.

Q. Okay. You cannot tell us who was present when the statement was made, is that correct?

A. That's correct.

Q. You cannot tell us with any precision when the statement was made, is that correct?

A. That's correct.

\* \* \* \* \* \*

Q. Okay. And it is your—Do I also understand that it is your characterization of the conversation, that it did not reference any formal complaint or writ-

ten claim having been received on that subject?

A. My characterization or my recall, vague as it is, was to anticipate a lawsuit. It certainly was not clear whether there was anything formal written or it was just something verbalized. It was a speculative type of comment, from my perspective. I didn't know it was a fact or had substance to it.

Q. Okay. One of the things I am trying to get at with the question is, in the Federal Tort Claim Procedures, as you may know, one of the steps that a person has to follow to get into court is to have filed a formal written administrative claim with FMC Rochester prior to filing the lawsuit. Okay. Can your characterization of the conversation that you overheard, okay, was it your understanding that any formal written administrative claim had been received at FMC Rochester at that time?

A. I have no recollection of such a statement or of reference to such a filing.

\* \* \* \* \* \*

A. I couldn't say it's likely. I could say it's possible. I don't know. I was not—I did not hear mention of a written claim.

Foster Dep. at 12, 16–18.

*John Chreno*

Q. And do you recall any discussion in that period in 1988 in the executive group regarding Mr. Bellecourt and the heart attack situation?

A. I don't have any specific independent recollection of that. Other than I recall that there were—I do remember being involved in general discussions about the claim when the newspaper article came out. But again, I don't know exactly when that came out.

\* \* \* \* \* \*

Q. (Mr. Hall) In October, November or December of 1988, was there a discussion in the executive group about a BP–9 submitted by Clyde Bellecourt concerning a heart attack?

A. Not that I can recall.

Chreno Dep. at 12–13. Although the deposition testimony raises the inference that some FMC officials were aware of a potential or pending claim against defendants, the deposition testimony does not provide sufficient evidence from which the court can determine that FMC actually received plaintiff's claim.

The federal defendants submitted additional deposition testimony on the mail receipt procedure that supports the court's finding. FMC receives its mail in a central mail room. Mail room employees sort the mail into departments and department employees pick up the mail. Logs are kept for legal and certified mail, but not for ordinary mail. Because plaintiff sent his alleged claim through ordinary mail, mail room employees would not have recorded receipt of plaintiff's claim.

Plaintiff addressed his claim to Associate Warden Olson. If FMC had received the claim, the associate warden's secretary would have picked up his mail from the mail room, taken the mail to the associate warden's office and opened and reviewed the mail before passing it on to the associate warden. The associate warden's secretary at the time plaintiff allegedly sent his claim, Kathy Leighton, testified that she did not see the letter until it was shown to her shortly before her deposition.

Associate Warden Olson testified that the claim would have come to his attention because it was addressed to him. However, Olson testified that he did not see the claim until it was shown to him shortly before his deposition. Likewise, Timothy Ondahl, who was acting associate warden between December 5 and 19, 1988, while Warden Olson was away from FMC, testified that he would have read mail addressed to Warden Olson during his absence. Mr. Ondahl testified that he did not see the claim until it was shown to him a few weeks before his deposition.

Plaintiff's claim is a BP–9 Request for Administrative Remedy ("BP–9") which is used for inmate grievances occurring during an applicant's imprisonment. When a BP–9 is received, the associate warden's secretary gives it to the case management

coordinator. If the case management coordinator determines that utilization of a BP–9 is the proper remedy for the relief requested, the associate warden's secretary notes the receipt of the BP–9 in a log book. The log contains the administrative case number, the name of the inmate, the assignment to prison staff and a brief description of the claim.

When the case management coordinator determines that a BP–9 is an improper request, receipt of the BP–9 is not marked in the log book. Instead, the case management coordinator prepares a memorandum rejecting the BP–9. The BP–9 is then returned to the applicant with a copy of the memorandum. The case management coordinator also keeps a copy of the memoranda rejecting the BP–9.

At the time plaintiff allegedly filed his administrative claim plaintiff was not an inmate. Consequently, filing a BP–9 was not the appropriate method by which plaintiff should have filed his claim. Therefore, the case management coordinator would have prepared a memorandum rejecting the BP–9. Julie Alba, the case management coordinator at the time of the alleged filing, testified that she did not prepare a memorandum rejecting plaintiff's claim. She further testified that, given the nature of plaintiff's allegations, his claim would have been forwarded to her and she would have remembered it. Alba testified that she did not see plaintiff's alleged claim until shortly before her deposition.

Plaintiff argues that the BP–9 should have been construed as a valid notification of a claim under the FTCA. Assuming that an FMC employee would have treated plaintiff's claim as a claim arising under the FTCA, receipt of the claim would have been recorded in a tort claim log and then the claim would have been forwarded to FMC's attorney advisor for analysis. Daryl Kosiak, FMC's attorney advisor at the time plaintiff allegedly mailed his claim, testified that he did not see plaintiff's alleged claim until it was shown to him after initiation of this lawsuit. Accordingly, the court finds that plaintiff has failed to satisfy his burden of establishing actual presentment and plaintiff's negligence claim against federal defendants is dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

*Other Claims Against Federal Defendants*

The court also dismisses plaintiff's eighth, ninth, and tenth counts in which plaintiff alleges that J. Michael Quinlan, Director of Federal Bureau of Prisons, Peter Carlson, Director of FMC, and Dr. Michael Trujillo, Medical Director of FMC, violated various duties owed to plaintiff. Plaintiff proffers no evidence to support those claims and the court holds that those claims fail to state a claim upon which relief may be granted. The court grants summary judgment on those claims pursuant to Fed.R.Civ.P. 56(c).

*Constitutional Claims*

The federal defendants move to dismiss plaintiff's constitutional claims pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment on those claims. On a motion to dismiss, the "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). Defendants have submitted additional documents with its motion. Because the court relies on those additional documents in making its determination, defendant's motion will be treated as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b)(6) & 56.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable

conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552. With this standard at hand, the court will consider federal defendants' motion.[6]

As his third and fourth causes of action, plaintiff alleges a violation of his fifth and eighth amendment rights. *See Bivens v. Six Unknown Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiff alleges that because he is Native American, defendants failed to fairly apply the laws and regulations governing his incarceration, violating his fifth amendment rights. Plaintiff further alleges that defendants' actions individually and in concert constituted cruel and unusual punishment in violation of his eighth amendment rights.

A plaintiff whose clearly established constitutional rights are violated by federal officials may sue them directly, even though no legislation by Congress exists specifically authorizing such a remedy. *See Bivens*, 403 U.S. at 396–97, 91 S.Ct. at 2004–05; *Arcoren v. Peters*, 811 F.2d 392, 393 (8th Cir.1987). Caution is observed in granting a *Bivens* remedy. *Arcoren*, 811 F.2d at 393. Courts should hesitate when factors, such as the existence of another equally effective remedy, exist. *Id.* (citing *Bivens*, 403 U.S. at 397, 91 S.Ct. at 2005). "A *Bivens* action must be founded upon disregard of requirements established by the Constitution. Mere *ultra vires* action in excess of the officer's lawful authority does not suffice." *Id.* at 393–94 (citing *Bivens*, 403 U.S. at 396–97, 91 S.Ct. at 2004–05). Erroneous decisions do not provide a basis for a *Bivens* action. *Id.* at 394 (citations omitted).

## A. Fifth Amendment

Beyond bare allegations of race discrimination, plaintiff has failed to allege any other facts supporting his claim. In a recent case regarding constitutional claims brought under 42 U.S.C. § 1983, Chief Judge Alsop warned plaintiffs that constitutional claims "should not be pled in ... [a] shotgun manner." *Liggins v. Morris*, 749 F.Supp. 967, 971 (D.Minn.1990).

> Almost invariably, complaints using this format are met with motions to dismiss or for summary judgment.... It is left to the court to divine what discrete constitutional violations are in fact legitimate and proper ... as against each defendant. The court must and does ferret out and dismiss those alleged constitutional violations that patently cannot be maintained. The process is time consuming, fraught with frustrations for both the court and counsel, and disrupts the orderly processing of legitimate claims.... The time has come for practitioners in this district to prepare complaints alleging [constitutional] violations ... in a fashion that will identify the

---

**6.** This summary judgment standard also applies to defendant Dr. Wynne's motion for partial summary judgment.

specific constitutional violations as against only culpable defendants. This court is no longer disposed to perform what should be the responsibility of diligent counsel in that regard.

*Id.* at 971. The court finds that admonition equally apropos to a *Bivens* claim. Plaintiff's assertion that he will fill in the details of his complaint with additional discovery is inappropriate and insufficient to withstand defendant's motion. Accordingly, because defendant has failed to provide facts that sufficiently demonstrate discriminatory treatment, defendants' motion for summary judgment on plaintiff's fifth amendment claim is granted.

**B. Eighth Amendment**

Plaintiff's eighth amendment claim also suffers from a vague factual predicate. However, because of the serious allegations of alleged indifference to plaintiff's medical needs, and because the court has plaintiff's medical records and other documents before it, the court will attempt to ferret out plaintiff's claim.

■ Prison employees violate a prisoner's eighth amendment right to be free from cruel and unusual punishment if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Smith v. Jenkins,* 919 F.2d 90, 92–94 (8th Cir.1990). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once proscribed." *Estelle,* 429 U.S. at 104–05, 97 S.Ct. at 291 (footnotes omitted).

**1. *Supervisory Personnel: Director of Federal Bureau of Prisons, J. Michael Quinlan, Warden of FMC, Peter Carlson, Medical Director of FMC, Dr. Michael Trujillo***

■ In a *Bivens* action, a federal official cannot be held vicariously liable for the acts of his subordinates under the doctrine of respondeat superior, unless he was personally involved in or participated in the unconstitutional acts. *Rizzo v. Goode,* 423 U.S. 362, 371, 376–377, 96 S.Ct. 598, 604, 606–07, 46 L.Ed.2d 561 (1976); *Tallman v. Regan,* 846 F.2d 494, 495 (8th Cir.1988). Unless plaintiff pleads an "affirmative link" between the supervisor's "personal participation, his exercise of control or direction, or his failure to supervise," dismissal is appropriate. *McKay v. Hammock,* 730 F.2d 1367, 1374 (10th Cir.1984). Beyond bare allegations, plaintiff has not alleged facts linking the supervisory personnel to the alleged unconstitutional acts. Neither has plaintiff produced evidence that the supervisory personnel maintained discriminatory policies, failed to provide adequate instruction or failed to supervise in a fashion that could link them to a deprivation of constitutional rights. Accordingly, the court finds that summary judgment is appropriate for J. Michael Quinlan, Peter Carlson and Dr. Trujillo on plaintiff's eighth amendment claim.

**2. *Lieutenant Cliff Friese***

■ Plaintiff admits that Lieutenant Friese, along with several other guards, responded to his call for help and that defendant Friese radioed for medical assistance after plaintiff said he was in pain. Plaintiff contends that during his examination he repeatedly told the doctor that his condition was serious, and that in response, defendant Friese warned plaintiff that he "should be quiet and not make trouble, or else ... [he] would risk being sent to the 'hole'". Plaintiff further contends that Dr. Wynne told plaintiff to contact him if he had a reoccurrence of pain during the night and that Lieutenant Friese failed to check on his condition during the night to determine if he needed further assistance.

The court finds that plaintiff does not have a valid eighth amendment claim against Lieutenant Friese. Plaintiff has not alleged sufficient facts indicating that Lieutenant Friese "intentionally denied or delayed" plaintiff's access to medical care. First, plaintiff admits that defendant Friese immediately responded to his call for assistance and shortly thereafter obtained medical care for plaintiff. Second,

although Lieutenant Friese himself may not have checked on plaintiff during the night, documents submitted to the court indicate that other prison guards did check plaintiff's status during the course of the night. *See* Exhibit L to federal defendant's Motion to Dismiss or for Summary Judgment. Third, plaintiff has not provided the court with sufficient evidence indicating that he attempted to obtain additional medical care and was deliberately denied that care.

■ Plaintiff stated that he "stayed awake in continuous pain throughout most of the night and considered calling for the doctor but did not do so because he thought the doctor would not listen to him." Plaintiff also claims that he did not call for the doctor because Lieutenant Friese "had told him [during Dr. Wynne's examination] not to make a disturbance and [p]laintiff believed that if he did call for a guard again, that he might be placed in solitary confinement without access to medical personnel." Plaintiff's Memorandum in Opposition at 3. Even assuming that plaintiff believed as he did, plaintiff's subjective determination that further requests for assistance would be ignored or cause him to be placed in solitary confinement is not sufficient to support his claim. Lieutenant Friese had no reason to believe that plaintiff required additional assistance after the doctor's examination and treatment, and "deliberately denied" him nothing. Therefore, plaintiff's eighth amendment claim against Lieutenant Friese fails.

### 3. *Medical Personnel: Physician Assistant Urriste and Dr. Wynne*

■ The eighth amendment is violated if medical care is so grossly incompetent or inadequate that it amounts to deliberate indifference. *Smith*, 919 F.2d at 93 (citations omitted). A doctor's decision to take an easier or less efficacious course of treatment, refusal to provide essential care, or care so inappropriate as to evidence intentional maltreatment violates the eighth amendment. *Id.* However, the indifference to medical needs must be substantial. Mere negligence, inadvertent failure to pro-

vide adequate medical care and gross negligence do not support a claim of medical mistreatment under the eighth amendment. *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. Likewise, a difference of opinion between an inmate and prison medical personnel regarding appropriate medical treatment does not suffice, *Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir.1981), neither does a delay in providing medical treatment unless the delay causes substantial harm. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir.1990).

#### a. Physician Assistant Urriste

Plaintiff claims that he reported to sick call at 7:20 a.m. on September 16, 1987, told Physician's Assistant Urriste that he was having chest pains and that she told him to wait in the waiting room and that someone would look at him immediately. Plaintiff contends that he was not examined until 9:15 a.m., and that this delay in treatment constitutes a violation of his eighth amendment rights.

The court finds, however, that the medical records submitted by the federal defendants indicate that plaintiff received some medical care between 7:20 a.m. and 9:15 a.m. on September 16, 1987. An electrocardiogram ("EKG") printout shows that an EKG was taken at 7:48 a.m. on September 16, 1987. Another medical document indicates that a blood test was performed at 8:10 a.m. Accordingly, the court finds that plaintiff has not shown that defendant Urriste was deliberately indifferent to plaintiff's medical needs.

#### b. Dr. Wynne

■ Plaintiff asserts that Dr. Wynne's examination so greatly deviated from the medical norm that it constituted an eighth amendment violation. In support of that contention, plaintiff submitted an affidavit of expert review. The expert stated that Dr. Wynne deviated from the normal standard of care in attending to plaintiff's reported condition. *See* Affidavit of Identification of Expert at 3. The expert stated that reports of pressure and pain in the chest area and shortness of breath should have led an examining physician to suspect

a heart attack. *Id.* According to the expert, given the potential danger to both life and vital organs posed by a heart attack, the normal standard of medical care dictates precautions, such as hospitalization and an EKG to determine if a heart attack was occurring. Plaintiff also asserts that he told Dr. Wynne that he was having a heart attack and needed hospitalization and an EKG.

The court finds that Dr. Wynne did not violate defendant's eighth amendment rights. The facts indicate that Dr. Wynne arrived at defendant's cell within a reasonable time after receiving word that plaintiff was having chest pains. Medical records indicate that Dr. Wynne thoroughly examined plaintiff and from his examination determined that plaintiff likely was suffering from severe indigestion. Dr. Wynne gave plaintiff antacid and observed that plaintiff's pain seemed to subside. Therefore, Dr. Wynne believed that a heart attack was not the cause of plaintiff's pain and determined that an EKG was unnecessary at that time. Dr. Wynne did make a notation in his medical notes that he would get an EKG of plaintiff if he continued to experience chest pain. The fact that Dr. Wynne misdiagnosed the source of plaintiff's pain, that his method of examination and treatment may not have followed community standards, or that he disagreed with plaintiff's suggested course of treatment does not amount to an eighth amendment violation. *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292. Accordingly, the court finds that Dr. Wynne's exercise of medical judgment was not deliberately indifferent to plaintiff's medical needs and that plaintiff's eighth amendment claim with respect to Dr. Wynne is denied.

### Civil Rights Claims

As his fifth and sixth causes of action, plaintiff asserts violations of his civil rights pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1985(3). Plaintiff contends that because of their racial animus, defendants treated him differently than other prisoners through failure to provide reasonable, competent, and standard medical care, in violation of § 1981. Plaintiff also contends that defendants conspired to violate his civil rights, in violation of § 1985(3).

As with his *Bivens* claim alleging violation of his fifth amendment rights, plaintiff must allege sufficient facts indicating defendants actions were motivated by discriminatory animus to survive federal defendants' motion for summary judgment on the alleged civil rights violations. *See Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). In addition, for his § 1985(3) claim to survive federal defendants' motion for summary judgment, plaintiff must also allege sufficient facts that shows defendants reached an agreement and directed themselves toward an unconstitutional action by virtue of mutual understanding. *See City of Omaha Employees Betterment Assoc. v. City of Omaha,* 883 F.2d 650, 652 (8th Cir.1989).

Beyond bare allegations of a conspiracy to violate his civil rights because he is Native American, plaintiff has provided no facts of racial animus or a conspiracy to act because of racial animus. Accordingly, federal defendants' motion for summary judgment on plaintiff's civil rights claims is granted.

### Statutory Claim: Patient's Bill of Rights

Plaintiff's seventh cause of action alleges a violation of Minn.Stat. 144.651, a medical "Bill of Rights" for patients. Beyond a general allegation that defendants violated this statute, plaintiff did not state which provision of the statute was violated or provide any facts supporting his allegations. Because plaintiff has not set forth sufficient facts to raise a genuine issue for trial, summary judgment is appropriate on this statutory cause of action.

### Medical Malpractice Claim

As a preliminary matter, the government contends that the court should decline to exercise jurisdiction over plaintiff's state law medical malpractice claim against defendant Dr. Wynne. Under Eighth Circuit law, the decision to dismiss plaintiff's pendent state law claims is discretionary. *See e.g. Curtis v. Sears, Roebuck & Co.,* 754 F.2d 781, 785 (8th Cir. 1985). The court has determined that it

will exercise jurisdiction over plaintiff's medical malpractice claim. If jurisdiction is not examined, plaintiff's state law claim may be barred by the Minnesota statute of limitations. Significant delay in this case has already occurred as it is approximately two and one-half years old. Deciding this issue also favors judicial economy because there has been a significant investment of judicial time and resources, and the court is familiar with the complex fact issues involved.

Dr. Wynne contends that summary judgment on plaintiff's medical malpractice claim is appropriate because (1) plaintiff did not timely file two affidavits that are necessary to sustain a medical malpractice claim under Minn.Stat. § 145.682, thereby warranting dismissal, (2) this is the type of case where expert testimony is necessary to establish liability, and therefore, plaintiff may not avail himself of an exception to § 145.682 excusing compliance with the affidavit requirement when expert testimony is not necessary to prove liability, and (3) plaintiff cannot establish excusable neglect for the late filing of expert affidavits. Plaintiff contends that he did not have to comply with Minn.Stat. § 145.682 because (1) this is the type of case where expert testimony is not necessary to establish liability, and (2) even if the court determines that expert testimony is necessary to establish liability, plaintiff filed an expert affidavit and filed it late because of excusable neglect.

Minn.Stat. § 145.682 requires a plaintiff bringing a medical malpractice claim to submit two affidavits supporting the claim. The first affidavit ("expert review affidavit") must be submitted with the complaint and state that before commencing the lawsuit, plaintiff's attorney reviewed the facts of the case with a medical expert who believed that at least one defendant named in the suit deviated from the applicable standard of care and thereby injured the plaintiff. Minn.Stat. § 145.682, subd. 3(a). In lieu of submitting the affidavit, plaintiff's attorney may state that the required expert review could not be obtained in time to file the suit within the statute of limitations. *Id.*, subd. 3(b). If the latter option

is selected, plaintiff's attorney, within 90 days of filing the complaint, must submit an affidavit stating that he has reviewed the case with an expert who believes the standard of care was breached. *Id.*

The second affidavit ("expert disclosure affidavit") must be served upon the defendant within 180 days after commencement of the suit and identify each expert plaintiff intends to call at trial, disclose the substance of the facts and opinions to which the expert will testify, and provide a summary of the grounds for each opinion. Minn.Stat. § 145.682, subd. 4. Answers to interrogatories may substitute for the expert disclosure affidavit, as long as they are provided within the requisite 180 days and contain the required information. *Id.*

The penalty for noncompliance is set forth in Minn.Stat. § 145.682, subd. 6. With respect to the expert review affidavit, failure to comply within 60 days after demand for the affidavit "results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case." *Id.* With respect to the expert disclosure affidavit, no demand is necessary to trigger the noncompliance penalties. Rather, the statute simply provides that failure to supply the affidavit within 180 days "results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case." *Id.*

There are two methods through which a plaintiff may escape dismissal for noncompliance. First, the court may extend the time for serving the affidavits, even after the time limits have expired, upon a showing of excusable neglect. *Stern v. Dill*, 442 N.W.2d 322, 324 (Minn. 1989). To claim excusable neglect, Minnesota courts require a plaintiff to satisfy four factors: (1) plaintiff has a reasonable case on the merits; (2) plaintiff has a reasonable excuse for his failure to meet the statutory time limits; (3) plaintiff has proceeded with due diligence after notice of statutory time limits; and (4) no substantial

prejudice will result to defendant by the extension of time. *See Parker v. O'Phelan*, 414 N.W.2d 534, 537 (Minn.Ct.App. 1987), *aff'd by equally divided court*, 428 N.W.2d 361 (Minn.1988).

Second, a plaintiff need not submit expert affidavits if liability may be established without expert testimony. Minnesota courts hold that "[e]xpert testimony is not necessary where the facts to be determined are within the common knowledge of the jury and where the results of surgical or medical treatment, viewed in the light of all the circumstances, provide a sufficient evidentiary basis to support an inference of negligence." *Bauer v. Friedland*, 394 N.W.2d 549, 553 (Minn.Ct.App.1986); *see also Sorenson v. St. Paul Ramsey Medical Ctr.*, 457 N.W.2d 188, 191 (Minn.1990).

It is undisputed that plaintiff did not file either of the expert affidavits in a timely manner. Plaintiff commenced this lawsuit against Dr. Wynne on September 18, 1989. With his summons and complaint, plaintiff served an affidavit of counsel stating that an affidavit of expert review could not be obtained before commencing the action because the statute of limitations was about to expire. On October 9, 1989, plaintiff was served with a demand for compliance with Minn.Stat. § 145.682.[7] Plaintiff did not comply with this demand. Allegedly, on April 4, 1990, plaintiff requested an extension of time through June 7, 1990, to comply with the statute.[8] Apparently, plaintiff did not request that the motion be set on for a hearing and he never obtained an order authorizing any extension of the

time limits. June 7, 1990, passed without any expert disclosure by plaintiff.

On or about November 21, 1990, plaintiff served answers to federal defendants' interrogatories. The interrogatories included an expert interrogatory asking for the information that Dr. Wynne contends plaintiff should have supplied in the required affidavits. In answer, plaintiff acknowledged: "To date expert witnesses have not been identified, apart from the physicians who rendered treatment to Plaintiff." *See* Exhibit C to Miller Aff. Plaintiff then named his two treating physicians but did not state that either physician would render an opinion regarding the claim for malpractice. *Id.* Plaintiff finally submitted an affidavit on February 7, 1991, that identified a medical expert and stated his opinions on the propriety of Dr. Wynne's examination of plaintiff. Thereafter, on February 20, 1991, plaintiff filed a motion seeking an extension of the § 145.682 time limits to excuse his late February 7, 1991, filing.[9] That affidavit was filed well beyond the 60 day limit for demand of expert review and approximately 11 months after expiration of the 180 day limit for filing the expert identification affidavit. Therefore, dismissal of plaintiff's malpractice claim with prejudice is appropriate unless plaintiff can establish that expert testimony is not necessary to establish negligence or excusable neglect kept him from timely filing his affidavits.

**A. Expert Testimony**

■ In medical malpractice cases, Minnesota courts hold that to establish a

---

7. This demand was made by the Mayo Foundation, who at the time was a defendant in this lawsuit. Pursuant to a stipulation by the parties, the court dismissed the Mayo Foundation on July 16, 1990. Plaintiff argues that because the Mayo Foundation is no longer a party, its October 9, 1989, demand has no statutory significance. Therefore, plaintiff argues that Dr. Wynne cannot use plaintiff's failure to comply with that demand as a defense, even though the 60 day limit to respond to the Mayo Foundation's demand for expert review expired well before the Mayo Foundation was dismissed. The court finds that it does not need to determine whether Dr. Wynne may use plaintiff's failure to comply with the Mayo Foundation's

October 9, 1989, demand as a defense because plaintiff also failed to satisfy the 180 day limit for submission of an expert identification affidavit. Dr. Wynne does not have to make a demand on plaintiff to use plaintiff's failure to comply with that later submission as a defense to the malpractice claim. *See* Minn.Stat. § 145.682, subd. 6.

8. No record of any such motion is contained in the Clerk of Court's file.

9. The court did not rule on this motion. By filing this order, the court hereby denies plaintiff's February 20, 1991, motion for an extension of time in which to file an expert affidavit.

prima facie case of negligence against a doctor a plaintiff must demonstrate:

> (1) the standard of care recognized by the medical community as applicable to the particular defendant's conduct, (2) that the defendant in fact departed from that standard, and (3) that the defendant's departure from the standard was a direct cause of [plaintiff's] injuries.

*Plutshack v. University of Minnesota Hospitals,* 316 N.W.2d 1, 5 (Minn.1982). Generally, expert testimony is needed to prove a prima facie case of medical malpractice. *Sorenson,* 457 N.W.2d at 191; *Plutshack,* 316 N.W.2d at 5.

Expert testimony is particularly necessary in cases involving a failure to diagnose. For example, in *Todd v. Eitel Hospital,* 306 Minn. 254, 237 N.W.2d 357 (1975), plaintiff alleged a negligent failure to diagnose a malignancy and the court found that expert testimony was required to prove the claim. The court reasoned that:

> This is distinctly not the kind of case where the negligence "speaks for itself" without expert medical opinion, such as where a surgeon leaves a sponge in the body or where there is unexplained injury to a healthy part of the body remote from the treatment area. Where, as here, the conduct of the physician involves the complexities of pathological diagnosis, we are not persuaded that nonmedically-trained jurors are competent to pass judgment.

*Id.* 237 N.W.2d at 361 (footnote omitted); *See also Sorenson v. St. Paul Ramsey Medical Ctr.,* 444 N.W.2d 848, 852 (Minn. Ct.App.1989) (expert testimony needed to establish negligent failure to diagnose placenta abruptio), *aff'd* 457 N.W.2d 188 (Minn.1990); *Smith v. Knowles,* 281 N.W.2d 653, 655 (Minn.1979) (expert testimony was crucial to the plaintiff's claim where the plaintiff alleged a negligent failure to timely diagnose and properly treat eclampsia, leading to the death of the mother and child during delivery).

Cases involving a failure to properly diagnose bear little relationship to the cases in which Minnesota courts have permitted medical malpractice cases to go forward without expert testimony. In such cases, the assessment of negligence has not required any specialized medical knowledge or evaluation of medical judgment. For instance, expert medical testimony has been found unnecessary where medical clips were left in a body after surgery, a surgeon failed to remove a sponge after surgery, a dentist let a grinding disc slip and cut a patient's tongue, administration of an anesthetic continued after cyanosis appeared, an x-ray burn resulted from an improper x-ray, and a chemical burn resulted from improper application of a chemical. *Miller v. Raaen,* 273 Minn. 109, 139 N.W.2d 877, 880 (1966) (summary of medical malpractice cases where expert testimony was not needed to establish liability); *see also Bauer v. Friedland,* 394 N.W.2d 549, 554 (Minn.Ct.App.1986); *Hestbeck v. Hennepin County,* 297 Minn. 419, 212 N.W.2d 361, 364–66 (1973). The Minnesota Supreme Court summarized the principles underlying those precedents as follows:

> All these cases involved situations where there was no doubt about the cause of the result complained of, and the result would not have followed in the absence of a breach of duty, the establishment of which did not involve any scientific knowledge.

*Miller,* 139 N.W.2d at 880.

■ Plaintiff's case is unlike any of the exceptional cases summarized in *Miller.* The essence of plaintiff's malpractice claim against Dr. Wynne is his alleged failure to test for and diagnose a heart attack and a belief that a jury could determine on its own that Dr. Wynne's diagnosis and treatment were medically negligent because Dr. Wynne failed to obtain an EKG of plaintiff. The result plaintiff complains of is a damaged heart, the cause of which is unknown. Evaluating Dr. Wynne's examination, diagnosis, and treatment of plaintiff will require knowledge of internal medicine and cardiology that lay jurors cannot be expected to have. Lay jurors do not possess the knowledge to differentiate between a heart attack and other potential causes of chest pain. Therefore, the court finds that a lay jury will require expert assistance to estab-

lish the standard of care for diagnosing a heart attack and to determine whether Dr. Wynne's actions failed to meet that standard.

This is not a case of abandonment, in which a lay person might decide that a doctor's actions in completely ignoring a patient were negligent. Plaintiff admitted that Dr. Wynne responded promptly to his call for assistance, examined him, made a diagnosis, and prescribed a treatment. Plaintiff also admitted that after treating him, Dr. Wynne advised him that if his pain recurred, he should call for assistance. Plaintiff admitted that he did not summon Dr. Wynne again that night, but waited until the morning sick call to seek further medical attention.

Even if plaintiff could establish the applicable standard of care and show Dr. Wynne's departure from that standard, the court finds that plaintiff cannot prove the third *Plutshack* factor, causation and damage, without expert testimony. Plaintiff suffered a heart attack and alleges that Dr. Wynne should have diagnosed the heart attack sooner by obtaining an EKG. To establish causation and damage, plaintiff must prove that the alleged delay in diagnosis caused injury beyond the injury caused by the heart attack itself, and he must provide some basis for the jury to quantify that injury.

The court finds that a lay jury has no basis for making such a sophisticated medical judgment. Whether plaintiff's health would have been any better if the diagnosis had been made earlier is questionable. Accordingly, the court finds in this case that expert testimony is necessary to prove a prima facie case of medical malpractice and that plaintiff did not present an expert affidavit within the time limits of Minn. Stat. § 145.682. Therefore, unless plaintiff can establish excusable neglect for the late filing of his expert affidavit, plaintiff's claim must be dismissed with prejudice.

### B. Excusable Neglect

The court finds that plaintiff has not satisfied *Parker*'s four factor test for excusable neglect. To establish excusable neglect under *Parker*, plaintiff must demonstrate that (1) he has a reasonable malpractice claim on the merits, (2) he has a reasonable excuse for failing to comply with the affidavit requirements of § 145.-682, (3) he diligently attempted to comply § 145.682 after notice of the statutory time limits, and (4) defendant will not be substantially prejudiced by an extension of time to comply with the statutory time limits. *Parker*, 414 N.W.2d at 537.

#### 1. *Reasonable Claim on the Merits*

Plaintiff does not have a reasonable case on the merits. Even if his belated expert's affidavit were deemed sufficient to establish the standard of care and Dr. Wynne's departure from that standard, it provides little insight into the causation and damage factor of a prima facie case of medical malpractice.

#### 2. and 3. *Reasonable Excuse and Due Diligence*

Plaintiff's showing is also deficient as to the reasonable excuse and due diligence elements. Plaintiff has not shown a reasonable excuse for failing to comply with § 145.682. He was aware of the statute from the outset of this litigation, as evidenced by his counsel's preliminary affidavit under § 145.682, subd. 3(a), claiming that the imminent expiration of the statute of limitations precluded prior expert review. Plaintiff failed to respond to defendants' requests for compliance. Specific demand for the expert review affidavit was made in October 1989, and interrogatories seeking the required expert disclosure information were served in March 1990. Plaintiff apparently sought an extension of time to satisfy the statutory requirements, but failed to obtain a hearing on that motion.

Plaintiff's counsel asserts that he had to consult eleven cardiologists before finding an expert who was willing to testify on behalf of plaintiff. Plaintiff provided no evidence as to when he consulted those cardiologists, who they were, how diligently he followed up on his quest for an expert, and what sources he consulted in his

search. Plaintiff's counsel claimed that several of the doctors were reluctant to testify against a fellow physician. Such an occurrence is quite common in medical malpractice suits and if such a claim constituted a reasonable excuse, few plaintiff's attorneys would need to worry about complying with § 145.682. Accordingly, the court finds that plaintiff has not satisfied the reasonable excuse or due diligence factors of excusable neglect.

#### 4. *Prejudice to Defendant*

The court finds that Dr. Wynne will be substantially prejudiced if plaintiff is permitted to avoid the § 145.682 time limits. It is almost two and one-half years since the suit was filed and almost four and one-half years since the alleged malpractice occurred. The lapse of time would cause substantial difficulty for Dr. Wynne to prepare to meet the opinions contained in the belated affidavit of plaintiff's expert.

Similar circumstances were presented in *Maloney v. Fairview Community Hospital*, 451 N.W.2d 237 (Minn.Ct.App.1990). There, the court dismissed Maloney's medical malpractice claim against defendant doctors because Maloney did not prove excusable neglect. *Id.* at 240. Maloney submitted answers to interrogatories identifying expert witnesses approximately six months after expiration of the 180 day limit although he never requested an extension of time within which to satisfy the statute. The court found that because Maloney had been aware of the statutory requirements from the beginning of the lawsuit and had been represented by the same attorney since before expiration of the statutory time limits, Maloney could not show a reasonable excuse for his failure to comply. *Id.* In addition, the court found that an extension of time would result in prejudice to the doctors because more than three years had passed since the alleged injury and treatment occurred and more than two years had passed since commencement of the lawsuit. *Id.*

In the present case, plaintiff submitted his expert affidavit approximately eleven months after expiration of the 180 day limit

and approximately three and one-half years after the alleged malpractice and more than one and one-half years after commencement of the lawsuit. Plaintiff allegedly made one request for an extension of time but failed to obtain a hearing on that motion. Plaintiff made another belated attempt to extend the statutory time limit on February 20, 1991, in response to Dr. Wynne's motion for summary judgment and failed to obtain a hearing on that motion. In addition, plaintiff was aware of the statutory time limits and has been represented by the same counsel from the beginning of this case. Therefore, the court finds that plaintiff cannot use the justification of excusable neglect to avoid the mandatory dismissal provision found in Minn.Stat. § 145.682, subd. 6.

In determining that plaintiff has not satisfied the requirements for excusable neglect, thereby causing plaintiff's suit to be dismissed on procedural grounds, the court is mindful that malpractice claims, if possible, should be decided on the merits. *Sorenson*, 457 N.W.2d at 192. However, the court finds that plaintiff's failure to comply with Minn.Stat. § 145.682 was sufficiently egregious to warrant dismissal on procedural grounds. Accordingly, plaintiff's medical malpractice claim is dismissed with prejudice.

IT IS HEREBY ORDERED that:

1. The federal defendants' motion to dismiss plaintiff's federal tort claim for lack of jurisdiction is granted;

2. The federal defendants' motion for summary judgment on all other claims is granted;

3. Defendant Dr. Wynne's motion for summary judgment on plaintiff's medical malpractice claim is granted;

4. The federal defendants' motion to amend its answer is granted;

5. Plaintiff's February 20, 1991, motion to extend the time in which to comply with Minn.Stat. § 145.682 is denied;

6. Plaintiff's October 2, 1991 motion for oral reargument is denied.

LET JUDGMENT BE ENTERED AC-
CORDINGLY.